**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| FELICIA GUEVARA, | Civil Action No. |
| Plaintiff, | |
| v. | |
| JAMES M. MERRILL; CARLOS N. WANZELER; STEVEN M. LABRIOLA; JOSEPH H. CRAFT, a/k/a JOE H. CRAFT; CRAFT FINANCIAL SOLUTIONS, LLC; CARLOS COSTA; SANTIAGO DE LA ROSA; RANDY N. CROSBY; FAITH R. SLOAN; BANK OF AMERICA CORPORATION, BANK OF AMERICA, NA; TD BANK, NA; MIDDLESEX SAVINGS BANK; WELLS FARGO & COMPANY; WELLS FARGO BANK, NA; FMR, LLC, also known as FIDELITY INVESTMENTS; CITIZENS FINANCIAL GROUP, INC.; CITIZENS BANK OF MASSACHUSETTS; FIDELITY CO-OPERATIVE BANK, doing business as FIDELITY BANK; WADDELL & REED FINANCIAL, INC.; WADDELL & REED, INC.; GLOBAL PAYROLL GATEWAY INC.; INTERNATIONAL PAYOUT SYSTEMS, INC.; PROPAY, INC., doing business as PROPAY.COM; BASE COMMERCE, LLC, doing business as PHOENIX PAYMENTS; VANTAGE PAYMENTS, LLC; GERALD P. NEHRA, individually and doing business as LAW OFFICES OF NERHA AND WAAK; GERALD P. NEHRA ATTORNEY AT LAW, PLLC; RICHARD W. WAAK, individually and doing business as LAW OFFICES OF NERHA AND WAAK; RICHARD W. WAAK, ATTORNEY AT LAW, PLLC | **CLASS ACTION COMPLAINT FOR, *INTER ALIA*, VIOLATIONS OF STATE AND FEDERAL SECURITIES LAWS** <br><br> **DEMAND FOR TRIAL BY JURY** |
| Defendants | |

**CLASS ACTION COMPLAINT FOR, INTER ALIA, VIOLATIONS OF STATE AND FEDERAL SECURITIES LAWS**

Plaintiff, on behalf of herself and all others similarly situated (hereafter "Plaintiffs") bring this class action against Defendants.

## JURISDICTIONAL STATEMENT

THE PLAINTIFF ASSERTS THAT THE JURISDICTION OF THIS COURT IS PROPER PURSUANT TO 28 U.S.C. SECTION 1332(d)(2) WHERE THE PLAINTIFF IS A PUTATIVE MEMBER OF A CLASS EXCEEDING 100 PERSONS, THE AMOUNT IN CONTROVERSY EXCEEDS 5 MILLION DOLLARS AND THE PLAINTIFF IS FROM A STATE DIVERSE FROM SOME OF THE DEFENDANTS.

## INTRODUCTION

Plaintiff seeks compensation for losses resulting from the Defendants' fraudulent activities; that is, advertising, encouraging, and selling interests and unregistered securities an unlawful "Ponzi" Pyramid Scheme, then wrongfully sheltering, and circulating the money and taking money from the plaintiff.

## THE PARTIES

**THE PARTIES**

1.   Plaintiff, Felicia Guevara, is an individual who resides in Florida. Ms. Guevara, like many other victims of TelexFree's Pyramid Ponzi Scheme, tendered cash in exchange for a membership in TelexFree (a "TelexFree Membership") and its promised pre-March 9, 2014 return in investment (the Pre-March 9, 2014 Return on Investment").

2.   TELEXELECTRIC, LLP and TELEX MOBILE HOLDINGS, INC. are separately organized in Nevada, but share the same agent; that

is, BWFC Processing Center, LLC, 3960 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169.

3.    TelexFree, Inc., TelexFree, LLC and TelexFree Financial, Inc. are Massachusetts corporations and are not defendants as a result of bankruptcy protection pursuant to Chapter 11 of the U.S. Bankruptcy Code.

4.    Defendant JAMES M. MERRILL resides at 1 Coburn Drive in Ashland, Massachusetts 01721 and was President, Secretary, and Director of TelexFree, Inc., Manager of TelexFree, LLC, and President, Secretary, and Director of TelexFree Financial.

5.    Defendant CARLOS N. WANZELER, Treasurer and Director of TelexFree, Inc., a Manager of TelexFree, LLC., and Vice-President, Treasurer, and Director of TelexFree Financial resides at .

6.    Defendant STEVEN M. LABRIOLA was the sales director of TelexFree and resides at 21 Kiwanis Beach Road, in Upton, Massachusetts.

7.    Defendant JOE H. CRAFT, CPA, the CFO of Telex Free, Inc. and TelexFree, LLC, resides at 825 E. Main Street in Boonville, Indiana 47601; CRAFT FINANCIAL SOLUTIONS, LLC is an Indiana limited liability corporation and is Craft's alter ego.

8.    Defendant CARLOS COSTA, Manager of TelexFree, LLC resides at 44A McClintock Avenue, Unit A, in Worcester, Massachusetts 01604.

9.    RANDY N. CROSBY, Promotions Manager, resides at 30 Club Court, in Alpharetta, Georgia 30005.

10.    SANTIAGO DE LA ROSA, Promotions Manager for TelexFree, resides at 189 Beacon Hill Avenue, Unit 2, in Lynn, Massachusetts 01902.

11.    Defendant FAITH R. SLOAN, Promotions Manager for TelexFree resides at 515 E. End Avenue, Unit 105, Calumet City, Illinois 60409.

12.    Defendant GERALD P. NEHRA is a Michigan attorney with offices at 1710 Beach Street in Muskego, MI., and is also the alter ego of Gerald P. Nehra, Attorney at Law, PLLC and has represented Telexfree in various matters, and specializes in Multi Level Marketing.

13.    Defendant RICHARD W. WAAK is a Michigan attorney with offices at 11300 East Shore Drive, Delton, Michigan 49046 and the alter ego of Defendant Richard W. Waak, Attorney at Law, PLLC and has represented Telexfree in various matters and also specializes in Multi-Level Marketing.

14.    Defendant TD BANK, N.A. (hereinafter sometimes referred to as "TD Bank") is a national banking institution in the United States chartered and has a principal place of business in the Commonwealth of Massachusetts 02109.

15.    The Defendant BANK OF AMERICA CORPORATION is a publicly traded corporation duly organized and existing under the laws of the State of Delaware.  Bank of America is a

national bank in the United States chartered and has offices in the Commonwealth of Massachusetts 02110.

16.  The Defendant, BANK OF AMERICA, N.A., has a principal place of business in Charlotte, North Carolina.  Bank of America N.A. is a subsidiary of Bank of America Corporation, and conducts business in the Commonwealth of Massachusetts.

17.  Defendant CITIZENS BANK OF MASSACHUSETTS  is a subsidiary of Defendant CITIZENS FINANCIAL GROUP, INC., a banking institution with offices in the Commonwealth of Massachusetts and principal offices in Providence, Rhode Island.

18.  Defendant FIDELITY CO-OPERATIVE BANK is a Massachusetts Chartered Banking Institution.

19.  Defendant MIDDLESEX SAVINGS BANK has its principal offices at 6 Main Street, in Natick, County of Middlesex, Commonwealth of Massachusetts 01760.

20.  The Defendant, WELLS FARGO & COMPANY has its principal office in San Francisco, California and conducts business nationally.

21.  The Defendant, WELLS FARGO BANK, N.A. has a principal place of business in Sioux Falls, South Dakota and conducts business in the Commonwealth of Massachusetts and nationally.

22.  The Defendant, FMR, LLC, a.k.a. FIDELITY INVESTMENTS has its principal offices in Commonwealth of Massachusetts 02110.

23.   The Defendant, WADDELL & REED FINANCIAL, INC is a publicly traded corporation with offices in Massachusetts.

24.   The Defendant, WADDELL & REED, INC. is a national financial and investment institution in the United States with a principal place of business at 6300 Lamar Avenue, Overland Park, Kansas  66202-4200.

25.   Defendant GLOBAL PAYROLL GATEWAY, INC. is a corporation with principal offices at 18662 MacArthur Boulevard, Suite 200, in Irvine, California 92612. GPG processed payments for TelexFree to its Promoters/Investors.

26.   Defendant INTERNATIONAL PAYOUT SYSTEMS, INC. has its principal offices at 2500 East Hallandale Beach Boulevard, Suite 800, Hallandale Beach, Florida 33009. IPS also processed payments for TelexFree to its Promoters/Investors.

27.   Defendant PROPAY, INC. is a corporation with its principal offices at 3400 North Ashton Boulevard, Lehi, Utah 84043. PROPAY, INC., and also does business as PROPAY.COM and also processed payments for TelexFree to its Promoters and Investors.

28.   Defendant BASE COMMERCE, LLC has its principal offices at 7910 S. Kyrene Road, Suite 106, Tempe, Arizona 85284, and also does business as PHOENIX PAYMENTS and also processed payments for TelexFree to its Promoters and Investors.

29.   Defendant VANTAGE PAYMENTS, LLC has its principal offices at 8300 N. Hayden Road  #A207, Scottsdale, Arizona 85251

and also processed payments for TelexFree to its
Promoters/Investors.

    30.   Defendant TelexElectric was set up to further the fraud
and disperse and dissipate money and make it difficult to
recover stolen money when the fraud was discovered.
TelexElectric is a Nevada limited liability limited partnership
formed on December 2, 2013 by Co-Defendants Merrill and
Wanzeler. Co-Defendants Merrill and Wanzeler are listed as the
General Partners of TelexElectric with an address of 4705 S.
Durango Drive, #100-J1 in Las Vegas, Nevada 89147, which is the
same address for TelexFree, LLC and TelexElectric.

## GENERAL ALLEGATIONS

1.   The Telex and individual defendants solicit investors
through the internet and other advertising mediums to
participate in the TelexFree "Business."

2.   There is no distinction between the business operations of
TelexFree, LLC.,  TelexFree, Inc. and TelexFree Financial and
TelexElectric and Telexmobile;  they have shared common
operations, management and ownership among defendants Merrill,
Wanzeler, Labriola, Craft and Costa. Hundreds of millions of
dollars paid by individuals believing they were purchasing
investment securities in these entities are unaccounted for.
These companies were specifically set up to carry out the fraud

by collecting, then sheltering money rightfully belonging to the putative class who were fraudulently induced to pay for illegal securities.

3.   Telex Mobile is a Nevada corporation formed on November 26, 2013. According to its filings with the State of Nevada Secretary of State Office, Telex Mobile identifies its officers and directors as:

    a. James M. Merrill is President, Secretary and Director, having an address at 4705 S. Durango Drive, #100-J1 (a post office box), Las Vegas, Nevada 89147.

    b. Carlos Wanzeler is Treasurer and Director, having an address at 4705 S. Durango Drive, #100-J1 (a post office box), Las Vegas, Nevada 89147.

4.   The Plaintiff was fraudulently induced to "invest" in at least two other business opportunities involving the offer or sale of unregistered securities, namely, 1) TelexFree's passive income scheme, and 2) an offer to invest in TelexFree's hotel program; he was also fraudulently induced to invest as an Associate, then pay more and invest as a Promoter and Manager, where in fact, they were unknowing Investors in a fraudulent Ponzi scheme.

5.   TelexFree's financial statements reveal that TelexElectric received a $2,022,329.00 "loan" from TelexFree during the class period. TelexFree's financial statements further reveal that

TelexFree Mobile received a $500,870 "loan" from TelexFree during the class period.

6.    These "loans" were in essence fraudulent transfers by TelexFree to evade claims by investors and creditors, and otherwise to unlawfully abscond with funds that rightfully belonged to creditors and investors.

7.    At all times material herein, Defendants Merrill, Wanzeler, Labriola, Craft and Costa were responsible for the control and operation of TelexFree and its affiliated entities. TelexFree's Management not only controlled the activities and operations of TelexFree, but also knowingly and willfully conspired to perpetrate, and did in fact perpetrate, the TelexFree Pyramid Ponzi Scheme with full awareness of its fraudulent and illegal nature. Defendant Merrill served as the President, Secretary, and Director of TelexFree, Inc., a Manager of TelexFree, LLC, President, Secretary and Director of TelexFree Financial, General Partner of TelexElectric, and President, Secretary and Director of Telex Mobile Holdings.

8.    In his capacities as Officer, Director, Manager and General Partner of the foregoing interrelated companies, Merrill exercised significant control over TelexFree's business operations; that is, the TelexFree Pyramid Ponzi Scheme. AS have other defenadants, Merrill has appeared in videos posted to the internet, in which he can be seen promoting TelexFree as a revenue opportunity for Promoters.

9.   At all times material herein, Defendant Wanzeler served as Treasurer and a Director of TelexFree, Inc., a Manager of TelexFree, LLC, Vice President, Treasurer, and a Director of TelexFree Financial, General Partner of TelexElectric and Treasurer and Director of Telex Mobile Holdings. According to corporate filings on record with SOC, at all times material herein, Wanzeler has also served as the Chief Executive Officer of TelexFree, Inc.

10.   In his capacities as Officer, Director, Manager and General Partner of the foregoing interrelated companies, Wanzeler exercised significant control over TelexFree's business operations. Wanzeler exercised significant control over the TelexFree Pyramid Ponzi Scheme.  Defendant Wanzeler has also participated in marketing TelexFree to potential investors, appearing in videos posted to the Internet in which he can be seen promoting TelexFree as a revenue opportunity for Promoters.

11.      The core of the Passive Income Scheme centers on the investment of either $289.00 or $1,375.00.  A participant who invests $289.00 receives one advertisement kit and ten VoIP Programs.  A participant who invests $1,375.00 receives five advertisement kits and fifty VoIP Programs.

12.      According to an investigation conducted by the United States Securities and Exchange Commission between August 2012 and March 2014, TelexFree received slightly more than

$1,300,000. from the sale of approximately 26,300 VoIP Programs, while receiving more than $302 million in investments by Promoters — thus, less than one-half of one percent of total revenue during this period derived from sales of TelexFree's purported product. During this period, TelexFree promised to pay Promoters returns of over $1.1 billion — nearly a thousand times the amount of revenue derived from sales of the VoIP Programs.

13.     TelexFree did not generate sufficient funds from sales of their phone service to pay the returns on investments that they had contracted to pay.  Instead, the funds TelexFree used to pay the purported returns on investments were the principal investment funds (membership fees) tendered by subsequent TelexFree investors.

14.     All Defendants knew that TelexFree was an illegal Pyramid Ponzi Scheme which involved the illegal sale of securities, but continued to aid, abet and further such illegal activities.   Despite the foregoing knowledge, TelexFree and the other Defendants continued to participate in the attraction and processing of new investors, continued to allow payments to process through TelexFree's accounts, allowed TelexFree to continue to illegally sell securities and further its illegal Pyramid Ponzi Scheme, and otherwise continued to further TelexFree's illegal activities.

15.     Nehra and Waak, along with the entities Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC, and

Richard W. Waak, Attorney at Law, PLLC are self-proclaimed "Multi-level Marketing" specialist attorneys. During the course of TelexFree's fraudulent scheme, the above-named Attorney Defendants acted as legal counsel to TelexFree. Attorney Nehra had previously acted as counsel to other multi-level marketing firms, which were forced, closed by federal and/or state authorities due to fraudulent pyramid and Ponzi schemes, Nehra and Waak have extensive experience in multi-level marketing, and with Ponzi schemes and managing the legal defense of multiple class action lawsuits. Nehra and Waak provided deceitful advice for the purpose of furthering perpetuating Defendants unlawful Pyramid Ponzi Scheme. Specifically, TelexFree's  Contract at Section 2.6.5 (m) provides that the Promoter must not "use terms that distort the real meaning of products or the mechanism and functioning of multilevel marketing, including, without limitation, expressions that convey the idea of instant wealth for nothing in exchange, as well as speaking of registration costs as a 'financial investment.'  Similarly, it is expressly prohibited to use the term 'INVESTMENT' at meetings and in promotional materials in general, orally or in writing.  As general partners of the Law Offices of Nehra and Waak, Attorney Nehra and Attorney Waak are jointly and severally liable for torts and obligations of the firm. During the time that the Law Offices of Nehra and Waak provided legal counsel to TelexFree, Attorney Waak was Principal Attorney of the law firm. Attorney

Waak, as Principal Attorney of the Law Offices of Nehra and Waak, was charged with oversight of the daily activities of the law firm.

16.      Defendants Craft and Craft Financial are indistinguishable with regards to their involvement with the TelexFree Pyramid Ponzi Scheme and knowingly perpetrated the fraud.  Defendants Craft and Craft Financial knowingly participated in and perpetuated TelexFree's illegal Pyramid Ponzi Scheme. In his capacity as CFO and certified public accountant of TelexFree, Defendants Craft and Craft Financial have been responsible for preparing or approving TelexFree's financial statements, overseeing TelexFree's accounting methods and records, and otherwise exercising significant supervision and control over TelexFree.  On April 23, 2013, in response to a request for a profit-and-loss statement issued by the Massachusets SOC, TelexFree produced a document purporting to be TelexFree's 2012 profit-and-loss statement. On February 5, 2014, the SOC requested a second profit-and-loss statement from TelexFree for 2012, which TelexFree produced on February 26, 2014. A comparison of these two profit-and-loss statements — each purporting to be TelexFree's profit-and-loss statement for 2012 — reveals massive discrepancies. The existence of duplicative accounting records containing egregious discrepancies is clear indicia of TelexFree's falsification of accounting records and failure to adhere to GAAP.

17.      During the course of the TelexFree Pyramid Ponzi Scheme, Defendants Bank of America, Bank of America, N.A., TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, Wells Fargo, Wells Fargo Bank, Fidelity Investments, Waddell & Reed Financial, Waddell & Reed, GPG, IPS, ProPay, Base Commerce, and Vantage Payments provided crucial financial services to TelexFree, which enabled TelexFree to carry on its Pyramid Ponzi scheme. TelexFree's financial services providers, including the aforesaid banking institutions, investment service providers, and payment processing services providers, knowingly aided and abetted TelexFree's Pyramid Ponzi Scheme by:

a. Receiving transfers of funds from, and on behalf of, TelexFree in the course of TelexFree's fraudulent business, despite knowledge of the fraudulent nature of TelexFree's business enterprise;

b. Receiving transfers of funds from TelexFree, its affiliated entities, and its executive officers, which transfers deepened TelexFree's insolvency, despite having knowledge of TelexFree's actual or imminent insolvency at the time of such transfers;

c. Processing payments to, and on behalf of, TelexFree, including its affiliated entities and Management, in the course of TelexFree's fraudulent business, despite knowledge of the fraudulent nature of

TelexFree's business enterprise; and

d. Otherwise enabling the TelexFree Pyramid Ponzi
Scheme to expand and continue by providing necessary
financial services to TelexFree, despite actual
knowledge of fraud on the part of TelexFree.

18. Defendants Bank of America, Bank of America, N.A., TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, Wells Fargo, Wells Fargo Bank, knew of the fraudulent nature of TelexFree's business operation, since at least June 2013 and despite knowledge of the fraudulent nature of TelexFree's business operations, these defendants continued to provide TelexFree with banking services necessary to the continuation of the Ponzi scheme.

19. Wells Fargo Bank maintained a depository account for TelexFree until March 14, 2014, long after TelexFree's Brazilian operation had been publicly exposed as a Pyramid Ponzi scheme and shut down, and after the issuance of a scam warning against TelexFree in the United Kingdom.

20. Defendants Fidelity Investments, Waddell & Reed Financial, Waddell & Reed knew about the fraud as the president of Fidelity is the brother of Defendant Merrill.

21. Defendants GPG, IPS, Propay, Base Commerce, and Vantage Payments, possessed actual knowledge of the fraudulent nature of TelexFree's business operations since at least June 2013.

22.  IPS provided TelexFree with a service titled "e-Wallet,"

which was used by TelexFree to process electronic transfers of funds by Investors to TelexFree. According to a TelexFree balance sheet, dated December 31, 2013, posted by the Washington State Utilities and Transportation Commission, as of December 31, 2013, TelexFree claimed $31,640,192.30 in assets then held by IPS (under the brand name "e-Wallet") on behalf of TelexFree.

23.  Defendant ProPay, which also does business as Propay.com, also processed such electronic transfers of funds on behalf of TelexFree.  ProPay processed transfers of funds by and on behalf of TelexFree, its affiliated entities, and its Management, during which time TelexFree was insolvent, despite knowledge of the fraudulent nature of TelexFree's business operations, thereby deepening TelexFree's insolvency and assisting TelexFree and its Management in concealing assets.


**CLASS ACTION ALLEGATIONS**

24.  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on their own behalf, and on behalf of all other persons similarly situated ("the Class"). The Class that Plaintiffs seek to represent is:


> All persons who tendered funds to TelexFree between 1/1/2012 and April 15, 2014 and who did not recoup the amount of money they originally invested. Excluded from the Class are the Defendants and their officers, directors, and employees of Defendant; any entity in which Defendant have a controlling interest; the co conspirators, so called insider promoters,

> legal representatives, attorneys, heirs, and
> assigns of the Defendants.

25.  Plaintiffs meet the requirements of Federal Rules of Civil Procedures 23(a) because the members of the Class are so numerous that the joiner of all members is impractical.  While the exact number of Class members is unknown to Plaintiffs at this time, based on information and belief, it is in the hundreds of thousands.

26.  Plaintiffs meet the requirements of Federal Rules of Civil Procedures 23(a) because there is a well-defined community of interest among the members of the Class, common questions of law and fact predominate, Plaintiffs' claims are typical of the members of the Class, and Plaintiffs can fairly and adequately represent the interests of the Class. This action satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3) because it involves questions of law and fact common to the member of the Class that predominate or any questions affecting only individual members, including, but not limited to:

a.  Whether TelexFree ran a Pyramid Ponzi Scheme on a knowing or negligent level;

b.  Whether TelexFree ran a lawful Multi-Level Marketing program; whether TelexFree offered and sold securities in the form of unregistered investment contracts constituting securities.

c.  Whether the other Defendants knowingly or negligently aided and abetted TelexFree in the sale of unregistered securities in

violation of the law;

e. Whether the Banking defendants knowingly aided and abetted TelexFree's Pyramid Ponzi Scheme or if not, whether they should have known;

d. Whether TelexFree and the other Defendants also violated Title 17, Code of Federal Regulations, Section 240.10b-5 by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons.

Whether Defendants violated Section 1965 of the Racketeer Influenced and Corrupt Organizations Act [18 U.S.C. § 1965];

27.   Plaintiffs' claims are typical of those of other Class members because Plaintiffs were defrauded by the Defendants' scheme to fraudulently offer and sell unregistered securities; Plaintiffs will fairly and accurately represent the interests of the Class.

28.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendants and would lead to repetitive adjudication of

common questions of law and fact. Accordingly, class treatment
is superior to any other method for adjudicating the
controversy. Plaintiffs know of no difficulty that will be
encountered in the management of this litigation that would
preclude its maintenance as a class action under Rule 23(b)(3).

29.   Damages for any individual class member are likely
insufficient to justify the cost of individual litigation, so
that in the absence of class treatment, the Defendants'
violations of law inflicting substantial damages in the
aggregate would go un-remedied without certification of the
Class.

30.   The Defendants have acted or refused to act on grounds
that apply generally to the class, as alleged above, and
certification is proper under Rule 23(b)(2).

### FIRST CLAIM FOR RELIEF

#### FRAUD

The Plaintiff realleges and incorporates by reference the
preceding paragraphs.

31.  All Defendants engaged in:
fraudulent or deceptive conduct in connection with the purchase
or sale of securities, in violation of Section 10 (b) of the
Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder;
(b) fraud in the offer or sale of securities, in violation of

Section 17(a) of the Securities Act of 1933 ("Securities Act");
and (c) the offer or sale of unregistered securities, in
violation of Section 5 of the Securities Act; and violations of
the Massachusetts General Laws, Chapter 93A, The Consumer
Protection Act with the intent to defraud the plaintiff;
unlawfully, willfully and knowingly used means and
instrumentalities in connection with the purchase and sale
of unregistered securities; and used and employed manipulative
and deceptive devices and contrivances in violation of, *inter
alia,* the Massachusetts Uniform Securities Act, M.G.L. c. 110A,
Section 410b, and in the alternative, F.S. Chapter 517, the
Florida Securities and Investor Protection Act.

### SECOND CLAIM FOR RELIEF

### MISREPRESENTATION

The Plaintiff realleges and incorporates by reference the
preceding paragraphs.

32.  Defendants had actual knowledge of the misrepresentations
and omissions of material facts set forth herein, and encouraged
the plaintiff to rely on those representations to the detriment
of the plaintiff; and/or acted with reckless disregard for the
truth in that defendants failed to ascertain and to disclose
such facts, even though such facts were available to them.  Such
misrepresentations and/or omissions were done knowingly or
recklessly for the purpose and effect of concealing the true

information about the investments, including their financial
condition and operations and encouraging the plaintiff to rely
thereon.  The ongoing fraudulent scheme described herein could
not have been perpetrated over a substantial period of time,
without the knowledge and complicity of Defendants and in full
violation of Section 10 (b) of the Exchange Act of 1934
("Exchange Act") and Rule 10b-5 thereunder; (b) fraud in the
offer or sale of securities, in violation of Section 17(a) of
the Securities Act of 1933 ("Securities Act"); and (c) the offer
or sale of unregistered securities, in violation of Section 5 of
the Securities Act; and violations of the Massachusetts General
Laws, Chapter 93A, The Consumer Protection Act, the
Massachusetts Uniform Securities Act, M.G.L. c. 110A, Section
410b, and in the alternative, F.S. Chapter 517, the Florida
Securities and Investor Protection Act.

THIRD CLAIM FOR RELIEF
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Plaintiff realleges and incorporates by reference the
preceding paragraphs.

33.  As a result of the intentional dissemination of materially
false and misleading information and the failure to disclose
material facts, as set forth above, the plaintiff paid
artificially inflated prices for worthless membership interests
in the investment during the Class Period and has greatly

suffered as a result of the loss of his life savings, plus money borrowed in reliance on the misrepresented circumstances fabricated by the defendants working together.

### FOURTH CLAIM FOR RELIEF

### NEGLIGENCE

34.  Whereas, to the degree that various defendants individual and entities named herein owes a duty of care to the plaintiff either by statute, by ethical rule, by professional ethical mandates or by creating the precarious circumstances the result of which caused suffering to the plaintiff, the plaintiff should be entitled to punitive damages.

### CONCLUSION

WHEREFORE, Plaintiff, on behalf of herself and her Class, pray for judgment as follows:

1.  Declaring this action to be a Class Action properly maintained pursuant to the Federal Rules of Civil Procedure and certifying Plaintiffs as the class representatives;

2.  Awarding Plaintiffs and Class members rescission and/or compensatory damages against Defendants for all damages sustained as a result of their wrongdoing, in an amount to be proven at trial, including interest;

3.  For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined;

4.  For an award of punitive damages;

5.    For an award of costs of suit and attorneys' fees, as allowable by law;

6.    For an award of interest;

7.    For the appointment of a receiver selected by Class Counsel and an accounting; and

8.    For an award to Plaintiffs and the Class such other and further relief as may be just and proper under the circumstances including equitable relief.


**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand a jury trial of their claims to the extent authorized by law.  However, the Plaintiffs do not consent to trial by jury in the United States Bankruptcy Court.



Respectfully submitted,
For Felicia Guevara
By her attorney,



Adriana Contartese, Esq.
Florida Bar # 0089634
Law Office Of Adriana Contartese
OCN Document Prep Suite 926
19W Flagler Street
Miami, FL  33130
617-268-3557
Adriana911@juno.com